UNITED STATES COURT OF APPEALS THE SEVENTH CIRCUIT COURT

F I L E D

Aug 11, 2008

AUG 1 1 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

WILLIAM WALLS
PLAINTIFF                        )    HARRY D. LEINENWEBER
                                 )
V.     No.                       )    APPEAL FROM THE UNITED STATES DISTRICT
                                 )    COURTS FOR THE NORTHERN DISTRICT OF
ILLINOIS Dep't of Correction-    )    ILLINOIS. EASTERN DIVISION
al Clinical Phychologists.ect-)  )
... et al.                       )    Case No. 08-C-4056
                                 )

## DOCKET STATEMENT

Now comes. the plaintiff William walls. pro-se before the this
Honorable Court. In the cause of the docket statement under
Circuit Court Rule 3(C), Docket statement. Therefore please
read the following:

(1). That on July 17, 2008: the plaintiff brought this complaint
before the United States District Court for the Northern District
of Illinois. Eastern Division. Case NO. 08-C-4056.

(2). That on Aug 1. 2008, Decision by the Court.Dismissed the
plaintiff complaint without prejudice. The plaintiff request
to procced as a poor person was granted. The plaintiff request
a trial by jury. ect..

Statement of Claim:

THE PLAINTIFF BRINGS A CLAIM OF HAVING LACK OF PROBABLE CAUSE
TO FILE A S.V.P ACT PETITION AND ILLEGAL DETENTION. CASE NO.
03-CR-80002.

Probable Cause is the level of suspicion required to justify
ceertain government intrusions upon interests protected by the
fourth amendment. The Supreme Court defines probable cause as
a fair probability that contraband or evidence of a crime will
be found in a particular place. Probable cause to obtain an
arrest warrant or to conduct a warrantless arrest exists when
police have, at the moment of arrest, knowledge of facts and
circumstances grounded in reasonably trustworthy information

1-of- 15

and sufficient in themselves to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested. In ornelas V. United States, the Supreme court explained that the probable cause determination is two fold and that each step warrants a different level of review. First, judges must determine the historical facts that is the events that occurred leading up to the stop or search, judges are to decide whether the facts viewed amount to probable cause. Public officials are presumed to be aware of the law governing their conduct. See Crawford-EL v. Britton, 523 U.S 574, 590-91(1998) Long V. Norris, 929 f. 2d. 1111, 1115(6th Cir. 1991)(-Public officials can not rely on ignorance of even most esoteric aspects of law to avoid liability. The Supreme court held that Preiser does not bar a 1983 claim where an inmate seeks an injunc--tion requiring a hearing to determine whether there was probable cause for pre-trial detention. Jensen V. Lane county, 222 f.3d. 570, 574-75(9th. Cir. 2000). Private psychiatrist considered state actor during process of evaluating and detaining individuals who are believed to be mentally ill because the psychiatrist and state prosecutors interwine in the determination. Wong Sunn V. U.S 471, 479(1963). It is basic that an arrest must stand on firmer grounds than mere suspicion. U.S V. Lawrence 179 f.3d. 343, 347(5th Cir. 1999)Prosecutors decides whether to bring charges and what charges to bring. U.S V. Sanders 211 f.3d.-

Continue on 3-of- 15.

711, 720(2d. Cir.2000)( Decision to prosecute in prosecutors discretion as long as probable case exist. 725 ILCS 207/30 Detention (a). Upon the filing of a petition under section 15 of this act the court shall review the petition to determine whether to issue an order for detention of the person who is the subject of the petition. The person shall be detained only if there is cause to believe that the person is eligible for committment under subsection (f) of section 35 of this act 2003. 725 ILCS 207/35 Trial, if the court or jury is not satisified beyond a reasonable doubt that the person is a Sexually Violent person. The court shall dismiss the petition and dircet that the person be released unless he or she is under some other lawful restriction, Illinois constitution article 1 & 2 states that due process and equal protection of the laws. That no person shall be deprived of life, liberty without due process and equal protection of the laws. This is interpted to means that procedures are suppose to be fair and just. See In re Winship, 397 U.S 385, 364, (1970), the reasonably doubt standard applies in both state and federal proceedings. See Sullivan V. Louisiana,- 508 U.S 275, 278( 1993). The winship reasonable doubt standard protects three interests first it protects the plaintiffs interest in being free from unjustified loss of liberty. 397 U.S at 363, Second; it protects the plaintiff from the stigmatization resulting from conviction. See id. Third: it engenders community confidence in the criminal law by giving concrete substance to the presumption innocence. See id. at 364-64. In this regard, the court stated that it is critical that the moral force to the criminal law not be diluted by a standard of proof that leaves poeple in doubt whether innocent men are being condemned. The burden of proof consists of two parts: the burden of production and the burden of persuasion. The burden of production requires producing enough evidences to put a fact in issue. The burden of production is usually borne by the party who first pleads the existence of a fact not yet in issue, but can shift from one party to another.

3. of 15
1-of-20.

If a party fails to sustain it burden of production, that party is
subject to an adverse ruling by the court. For instances the prosecution
has the burden of production on every element of the offense charged.
If government fails to produce sufficient evidences for any element
thereby not bringing the fact into issue, the judge may direct a verdict
in the plaintiff favor. 705 ILCS 405/1-7(b)(1), no law enforcement
officers or other persons or agency may knowingly transmit to the
Department of Corrections Adults Division or Federal Bureau investi-
gation any fingerprints or photograph relating to a minor who has
been arrested or taken into custody before his or her 17th birthday.
705 ILCS 405/5-905-(5), that the records of law enforcement officers
concerning all minors under 17 years of age must be maintained separately
from the records of Adults.

730 ILCS 5/3-2(b) there shall be a department of juvenile justice
which shall be administrated by a director appointed by the governor
under the civil administration code of Illinois. The Department
of juvenile justice shall be responsible for all person under
17 years of age when sentence to imprisonment and committed
to the department under subsection (c) of section 5-8-6 of this
5-750 of that juvenile court act of 1987, Persons under 17 years
of age committed to the department of juvenile pursuant to this
code shall be Sight and Sound= separate from adult offenders
committed to the department of corrections. 720 ILCS 207/10(2),
that the plaintiff must be found delinquent under section 5/20
of the juvenile court act or of( now repealed section 5-620

of that act. 705 ILCS 405/5-915-(4) says that upon the entry
of an order expunging records or files the offense in which
the records files concern shall be treated as if it never occurred.
Law enforcement officer and agency shall shall properly reply
that no file exist with respect to that person.
Anaya V. Crossroads Managed Care Syst., 195 f. 3d 584,596 (10th
Cir., 1999) private detoxification facility considered state
actor when working in conjunction with official state actors
to illegaliy detained individuals in the facility.
Black law dictionary, Seventh edition defines Malice: as the
intent, without jurification or excuse to commit a wrongful
act, (2)- Reckless disregard of the law or of a persons legal
rights.

Excuses are being made up by state officials and the state prosecutors
to committ wrongful acts. Reckless disregard of the law or of
a persons legal rights

Berg V. County of Allegheny, 219 f. 3d. 261, 268(3d Cir 2000)
arresees 1983 claim for false imprisonment based on mistaken arrest
and detention was proper because police lacked probable cause to
arrest. Simpson V. Rowan, 73 f. 3d. 134, 136(7th Cir. 1995)( prisoner
could bring claim under 1983 for illegal search or arrest since illegal
search or arrest may be followed by valid conviction.

## FACTS

(1). Referral issue: Mr. Walls was referred by the Illinois Department
of Corrections ( IDOC ), for a psychological evaluation upon his
release to determine if the plaintiff meets the criteria for comm-
ittment under public act 90-0040. Sexually violent person comittm-
ent act. (exhibit -2. attached and made apart of ).

(2). Procedures: a review of the material located in the Illinois
Department of Corrections Master file was conducted. After the co-
mpletion of a case conference with other clinical psychologists
gists in the special evaluation unit, arrangements were made to have
Ms. Jacqueline Buck Ph.D, evaluator for ( IDOC ), to attempt to
evaluate the plaintiff at the Robinson C.C upon his release, ( exhibit-2
attached and made apart of ),.

(3) That the plaintiff was incarcerated in the Illinois Department
of Corrections on 2-26-1993. for a aggravate criminal sexual
assault he did not commit. Case No. 92-CR-16471,. The Cook County
statesattaorney in this case gain there conviction on false
testimony. And the plaintiffs attorney in this case ignored
the plaintiff aliba defense, Exhibit-10. attached and made apart
of ),.

(4). The plaintiff was sentence to serve (22) years altogether
in ( IDOC ). this was the plaintiff first time incarcerated
as a adult in ( IDOC ), case no. 92-CR-16471, the plaintiff
release date from ( IDOC ) was 3-9-03. (exhibit 10, Attached
and made apart of ),.

(5). Upon the plaintiff released date from ( IDOC ) he was visited by a Ms. Jacqueline Buck, Ph.D, at the Robinson C.C for the purpose of evaluating the plaintiff under the S.V.P act, 03-CR-80002, ( Exhibit-1, attached and made apart of),.

(6). The plaintiff Did Not participate in the evaluation attempted by MS. Jacqueline BUck, Ph. D, ( Exhibit-2 and 3, attached and made apart of ),. 

(7). Ms. Jacqueline Buck, drafted a petition and recommended to the Cook county state attorney office and the attorney general office that the plaintiff be petitioned under the S.V.P act, case no. 03-CR-80002, ( Exhibit- 2 and 3, attached and made apart

(8). Ms. Jacqueline Buck petition was based on the plaintiff Illinois Department of Corrections Master file the (1)- one adult conviction and confidential juvenile records, ( Exhibit-1 and- 2 and 3, attached and made apart of ),.

(9). The Cook County state attorney office MY.Richard Devine and the Attorney General office, Ms. Lisa Madigan, accepted Ms. Jacqueline BUck petition and filed the petition against the plaintiff to be tried under the S.V.P act, case no. 03-CR-80002,- ( Exhibit-1 and 4, attached and made apart of ),.

(10). The plaintiff was ordered to be transfer and detained at the Illinois Department of HumanService, Treatment and detention Facility. To be writed to the Cook County CRiminal court building where the plaintiff will be tried under the S.V.P act, Case no.03-CR-80002, ( Exhibit-5, attached and made apart of ),.

(11). Before probable cause hearing the plaintiff filed a notarized notice with the court. Given notice that He Does Not Wish to Sign a Waiver or Give his Approval for the use of his Confidential Juvnile Records.

(12). Before probable cause hearing the plaintiff also filed a
notarized notice with the court that he does not want to participate
in a evaluation which would equal to a waiver of his confidential
records. ( Exhibit-6. attached and made apart of )..

(13). On Aug 31, 2004; the plaintiff then filed an extra ordinary
motion that entitled him to relief. The Reconsider motion to
dismiss the state petition due to the petition being brought
in bad faith and without good cause.. ( Exhibit- ll , attached
and made apart of),.

(14). That on JAn 5, 2004; the Assistant attorney general Mr.
Micheal Kress and the Cook County state attorney MS. Mary ellen
Murphy, filed a motion in response to the plaintiff extra-ordinary
motion filed on Aug 31, 2004. ( Exhibit-7 , attached and made apart
of)..

(15). That the state prosecutors argued that 705 ILCS 405/1-7
(a)(9), allows them to use the plaintiff confidential records.
( Exhibit-7, attached and made apart of )..

(16). On or about Nov 29. 2004; the plaintiff filed with the court
a notarized notice. paragraph (2), stating that the state prosecutors
argue that they are allows to use the juvenile records under 705-
ILCS 405/1-7(a)(9), that the state prosecutors refuse to acknowledge
that this law can only be used in agreement with rule 725 ILCS
207/10-(2), under section 5/20 of the juvenile court act of
1987 or now repealed of section 5-620 of the act. ( Exhibit-8.
attached and made apart of )..

(17). The plaintiff judge Ms. Cannon, instruted the plaintiff
to argued his own motion refuse to accept the facts of the case
then denied the motion. Adverse actions were being display to
stop the plaintiff lawyer from arguing the plaintiff motion.
Where the court would not have to accept the facts of the case
and give the plaintiff the relief sought.

(18). The state prosecutors then called there witness MS. Jacqueline.

evaluator for the state to testify to the petition. Probable cause was found and the plaintiff moved forward to pre-trial stage.

(19). On Oct 24, 2007; the plaintiff filed a motion to dismiss the petition due to Vindictive prosecution. Where the plaintiff submitted over (12) co-employees of the IDHS-TDF as witnesses to the issues of his motion.

(20). Again, the plaintiff judge refuse to accept the facts of the case, instructed the plaintiff to argue his attorney and denied his motion.

(21). On March 31, 2008; the plaintiff filed a motion to present the issue of imminent danger, ( Exhibit 9, attached and made apart of ),.

(22). Again, the plaintiff judge refuse to accept the fact of the case. Instructed the plaintiff to argue his own motion without the use of his attorney then denied the motion.

(23). On 5-15-08; the plaintiff show for a court appearance before his Honorable judge MS. Cannon and gave Notice to the court. That the plaintiff will be filing a motion for Substitution of Judge by cause against Ms. Cannon. The case was continued until 6-16-08, for the filing of this motion.

(24). The plaintiff has continuely argued that the preponderance of evidence is in the plaintiff favor and has placed the states petition in a hardship to proceed to trial. That the plaintiff present a case where the outcome can clearly be seen in the plaintiff favor. Had not the judge refuse to accept the facts of his case and display adverse actions towards the plaintiff case that the outcome of the case would be have been greatly different.

(25). On 6-13-08; the IDHS-TDF, Ms. Michelle Ducan, administration assistance recieved a fax from the state-

prosecutors officer to not bring the plaintiff to court. To
cancel the plaintiff schedule court writ on 6-16-08.

(26). On 6-16-08; the plaintiff was not taken to his schedule
court writ.

(27). The plaintiff investigated and was giving this answer by
agency officers at the IDHS-TDF on 6-16-08.

(28). That the plaintiff argue that he has served this facility
with a notarize notice that he wishes to be present at all his
schedule court writs, ( Exhibit-13, attached and made apart
of

(29). That a writ is an order written by a judge that requires
a specific act to be performed, or give someone the power to
have the act performed.

(30). 725 ILCS 207/25, Give the plaintiff a right to be present
at each court proceeding or hearing.

(31). 725 ILCS 207/35, Give the plaintiff a right to a trial.

(32). The IDHS-TDF, refuse to take the plaintiff on his schedule
court writ and refuses to give the plaintiff any information
concerning the re-schedule of his court date to be writed for
his court appearance under the S.V.P act, case no. 03-CR-80002.

(33). The IDHS-TDF and the state prosecutors are denying the
plaintiff of both a right to be presented at his court proceeding
and a trial. Due to the plaintiff placing the state prosecutors
in a hardship to proceed to trial.

(34). The plaintiff has argue that the state prosecutors and
the agency officers of the state. Has brought the S.V.P act
petition threw malice and Vindictive behavior. To stop the plaintiff
release and pursuing-



8

- law suits against the state prosecutors office office for the wrongful imprisonments of both cases No. 92-CR-16471 and now 03-CR-80002.

(35). Imminent danger exist where the IDHS-TDF has exposed the plaintiff to a campaign of malice and vindictive behavior tor

(a). Force committment under the S.V.P act and;

(b). Bring death to the plaintiff to erase the potential law suits for malicious and wrongful imprisonments ( Exhibit 13, attached and made apart of ),.

(36). Where there exist a lack of probable cause to file the S.V?P act petition and illegal detention, Case No. 03-CR-80002.


## ARGUMENT

Starting from the vary beginning that all the procedures follow to petition the plaintiff under the S.V.P act, was Malice. Where the Illinois Department of Corrections clinical psychologists in the special evaluation unit of 2003; and, where a MS. Jacqueline Buck, Ph. d, evaluator for ( IDOC ), and where attorney general office and the Cook County states attorney office and; where the Illinois Department of HumanService, Treatment and Detention facility has all followed Malice behavior in the petitioning under the S.V.P act law. Where the clinical psychologist in the special evaluation unit has wrongly determine that the plaintiff meet the criteria for committment under public act 90-0040, the sexually violent persons commitment act, ( Exhibit-2, attached and made apart of ),. Where Ms. Jacqueline Buck, Ph.d evaluator for ( IDOC ), wrongly drafted a petition with the use of confidential juvenile information taken from the plaintiff ( IDOC ) Masterfile and recommended that the plaintiff be committed under the S.V.P act, case no. 03-CR-80002,.

Where the attorney general office Ms. Lisa Madigan and the Cook County state attorney office, Richard Devine has accepted the wrongful recommendation and filed a petition against the plaintiff to be committed under the S.V.P act, case no. 03-CR-80002, Where all of the state officials are attempting to maliciously committ the plaintiff with the use of confidential juvenile records that in violation of state laws. At each stage of the procedures all of the above state officials were attempting to gain the authority-

of law to use the plaintiff confidential juvenile records against
him.

Here state officials are depending on the plaintiff to participat-
ing in a act that equal to a waiver for the use of his confidential
juvenile records. Once the plaintiff ( IDOC ) Masterfile was
reviewed by the special evaluation unit. And the special evaluation
unit became aware of the plaintiff confidential juvenile records
being present on there master file in violation of state laws.
The special evaluation unit should have erase the plaintiff
juvenile records from there file and made no attempts to have
the plaintiff tried with the use of that juvenile records. This
same procedures should have been followed by MS. Jacqueline
Buck and the state prosecutor offices. Had these state officials
performed there duties in good faith the outcome would have
been greatly different. That none of the state officials had
probable cause to perform the act that they have perform. In
the plaintiff proceeding under the S.V.P act, before the Cook
County Criminal Courts Building. The plaintiff has placed the
state prosecutors in a hardship to proceed to trial, where the
state prosecutors can not proceed with confidential juvenile
records in violation of state. As a result, now the state prosecut-
ors has ordered the IDHS_TDF to participate in further malice
and vindictive behavior in the committment under the S.V.P act
proceeding. Case No. 03-CR-80002. Where the plaintiff is being
deliberately deprived of his court proceeding and right to be
tried under the S.VP act. Also, at the IDHS-TDF agency, the
has been expose to a campaign of physical and mental harrassments
and retaliations. The plaintiff has also suffered intimidation
and threats. Bart V. Telford, 677 f.2d. 622 [7th Cir. 1982,
Where (1). The plaintiff is doing something that he has a constit-
utional right to do, which is called protected conduct. (2).
what the state official did to the plaintiff, which is called
an adverse action was so bad that it would stop an average person
from continuing with their suit, and; (3). That there is a causal
connection. That means the state officials did what he did because
of what the plaintiff were doing. Or, in legal terms: The state
officials adverse action was dircetly related to the plaintiff
protected conduct. The IDHS-TDF is a private ran company contacted
by the state. The name of the company is Liberty Health, The-

IDHS-TDF does not have a relationship with any independent oversight by an establish hospital or any mental health accreditation agencys. The plaintiff brings a claim where his life and liberty is at stack. Pre-trial detainees are detained at a penal institution, and if committed under the act is indefinite. Where indefinite is the same as a life time inprisonment.

The Supreme Court has enunciated a two-part test for determining whether a private indivisual has acted under color of state law. See Lugar V. Edmondson oil co.., 457 U.S 922, 937, (1982), First, the claimed deprivation must be caused by another exercise of a right or privilege created or imposed by the state or undertaken by a person for whom the state is responsible. See id. Second, under the facts of the instant case, the private party must be fairly characterized as a state actor. First, the court has held that misuse of power, possessed by virtue of state law and made possible only because the  wrongdoer is clothed with the authority of state law, is action taken under color of state law. U.S V. Classic, 313 U.S. 299, 326(1941). Second, the court has held that to act under color of state law a defendant need not be an officer of the state: It is sufficient that he or she is a willful participate in joint activity with the state or its agents.;Third, the court has held that private persons who are authorized to exercise state authority are deemed to be acting under color of state law. Anaya-V. Crossroads Managed care syst, private detoxification facility considered state actor when working in conjunction with official state actors to illegally detained individual in there facility. Jensen V. Lane county. 222 f.3d. 570, 574-75(9th. Cir. 2000), private party psychiatrist considered state actor during process of evaluating and  detaining individuals who are believed to be mentally ill because the psychiatrist and state prosecutors intertwine in the determination. In Shadwick V. City of tampa. 407 U.S. 345(1972), the Supreme court explaned that whatever else neutrality and detachment might entrial it is clear that they require severance and disengagement from activities of law enforcement officers. 18 U.S.C 2510 (7), 2518(1)(a), five circuit have held that prison and detentions facility official are investigative or law enforcement officers under 2510(7).

12.24.15.

11

In Richard V. MCknight, the Supreme court held that prison guards
employed by a private prison management firm were not entitled to
qualified immunity because there is no firmly rooted tradition of
immunity for private employees exercising government functions and
because the immunity doctrines purpose were not sered by providing
immunity to such individuals. <u>Armstrong V. Squadrito, 152 f.3d.</u>
<u>564, 582(7th Cir. 1998)</u>(prison official not entitled to qualified
immunity because executive abuse of power shocked the conscience
when state official denied detainee access to court.
<u>Centanni V, Eight Unknown officers, 15 f.3d. 587, 592(6th.Cir. 1994)</u>
Police not entitled to qualified immunity because law clearly est-
ablished that seizure and detention of person not suspected of
criminal activity required probable cause and police lacked such
probable cause. <u>Baptiste V. J.C Penney Co. 147 f.3d. 1252, 1260</u>
<u>(10th Cir. 1998)</u>( police not entitled to qualified immunity because
arrest lacked probable cause. <u>Mosley V. Wilson, 102 f.3d. 85,91</u>
<u>( 3d. Cir. 1996)</u>( action against arresting officer alleging malic-
ious prosecution and arrest without probable cause not precluded
even though conviction ultimately overturned. <u>Brown V. Edwards 721</u>
<u>f.2d. 1442, 1448(5th. Cir. 1984)</u>( Litigation of probable cause issue
in 1983 action not barred by prisoner prior guilty plea when issue
not actually litigated in prior proceeding. <u>Rogers V. Powell, 120</u>
<u>f.3d. 446, 454-55(3d. Cir. 1997)</u>( State trooper not entitled to
qualified immunity for unlawful arrest based on rumors of existence
of arrest warrant in adjoining county. <u>Hafer V. Melo, 502 U.S 21,</u>
<u>25-29(1991)</u> Individual capacity suit against state official upheld
even when officials actions cloaked with state authority and could
not have been effectuated if acting only in personal capacity.
<u>White V. Gregory, 1 f.3d. 267, 270(4th. Cir. 1993)</u>( Individual
capacity suit against state prison officials upheld; state prison
officials not absolutely immune from personal liability. <u>Browning</u>
<u>V. Vernon, 44, f.3d. 818, 821-22(9th. Cir.1995)</u>(Prison officials
exercising discretionary functions not entitled to qualified
immunity in 1983 action alleging due process violations in admini-
stration of probation because inmates rights were clearly established.

Morley V. Walker, 175 f.3d. 756, 760 (9th Cir. 1999) prosecuors not
absolutely immune for securing an arrest not based on probable cause.
Allen V. Lowder, 875 f. 2d. 82, 85-86(4th Cir, 1989){(prosecutors
not absolutely immune in suit alleging that prosecutor attempted
to secure continued incarceration of defendant after reversal of
conviction because prosecutors acting in administrative capacity.
Carter V. Philadelphia, 181 f. 3d. 339, 350(3d. Cir. 1999){ District
attorneys office is part of county and therefore is not immune as
arm of state.

The Supreme court in Lewis V. Casey, 518 U.S. 343(1996) stated that
in order to get an injunction, a prisoner must show actual or imminent
injury. This means that the plaintiff have to show the court that
he were really harmed in some way, or that it is likely that he
will be harmed very soon. Jolivet V. Deland, f.2d. 573, 577 ( 10th.
Cir, 1992){ Upholding court award of $250 as compensation for emot-
ional distress caused by interception of inmates personal mail.

Slicker V. Jackson, 215 f.3d. 1225, 1231(11th. Cir 2000){compensatory
demages award for actual physical injury where such injury is est-
ablished even if evidence as to exact quantity of actual damage not
presented.

Daskalea V. District of Columbia, 227 f.3d. 433, 444 ( D.C. Cir.
2000){ Compensatory damages for mental and emotional distress causing
physical injury are proper.

Makin V. Colo. Dept of Corrs., 183 f.3d. 1205, 1241(10th. Cir.
1999)(Emotional or mental distress due to violations of 1st
amendment rights is sufficient to claim compensatory damages.

Mathie V. Fries, 121 f.3d. 808, 813(2d. Cir. 1997){ Upholding
compensatory damages award of $ 250, 000 for post traumatic
stress disorder resuling partially from prison officials sexual
abuse and assault.

Bolden V. Southeastern Pa. Transp. Auth., 21 f.3d. 29, 33-34(3d.
Cir. 1994)(Upholding jury award of $25, 001 as compensation
for emotional distress caused by employer-mandated unconstitutional
drug test. Spell V. McDaniel, 824 f.2d. 1380, 1400(4th. Cir.1987)-
upholding jury awards of $ 900,000 as compensation for police
brutality.

Hale V. Fish, 899 f.2d, 390, 403(5th.Cir. 1990)* upholding court
award of compensatory damages for arrest without probable cause.
Trobaugh V. Hall, 176 f.3d. 1087, 1089(8th. Cir. 1999)( Holding
that compensatory damages should be awarded sufficient to actually
compensate plaintiff for injuries.

To get punitive damages, the plaintiff need to show that the defendants
actions were motivated by evil motive or intent or involved reckless
or callous indifference to his rights. That the state officials has
hurt the plaintiff on purpose or do something so clearly dangerous,
they must have known it was likely to the plaintiff. Smith V. Wade,
461 U.S 30, 51(1983)(Punitive damage award proper in 1983 case in-
volving reckless or callous disregard for the plaintiff rights as
well as intentional violations of federal law. Allah V. Al-Hafeez,
226 f.3d. 247, 252(3d. Cir.2000)( 1983 punitive damages proper
when based solely on violation of constitutional rights and
not physical or mental injury. Trobaugh V. Hall, 176 f. 3d.
1087, 1089(8th. Cir. 1999)( Punitive damages proper in 1983
action because plaintiff was deliberately punished solely for
exercising 1st. amendment rights.

The plaintiff requested an injunction, Compensatory demages
and Punitive Demages / The plaintiff also demand to be tried by a jury.
All being sued in there individual and official capacity.

15. 04. 15

14

IN THE CIRCUIT COURT OF COOK COUNTY
CRIMINAL DIVISION

IN RE THE COMMITMENT OF )
)
WILLIAM WALLS )
Inmate # B40723, )
Respondent. )

CASE NO: *03CR-80002*

(Exhibit )
(Here to attached
and made opened of)

## PETITION

NOW COME THE PEOPLE OF THE STATE OF ILLINOIS. by LISA MADIGAN,

Illinois Attorney General, through her assistant, MICHAEL KRESS, Assistant Attorney General,

and by RICHARD DEVINE, Cook County State's Attorney, through his assistant, SHAUNA

BOLIKER, Assistant Attorney General, pursuant to the Sexually Violent Persons Commitment

Act, 725 ILCS 207 et seq, and allege that WILLIAM WALLS, Inmate # B40723 is a sexually

violent person, as defined in Section (f) of Section 5 of the Act, and move this Honorable Court

for an ORDER FOR COMMITMENT of the person of Respondent, WILLIAM WALLS, Inmate

# B40723, pursuant to Section 40 of the Act.

In support of this Petition, the People of the State of Illinois state as follows:

1. That Respondent, WILLIAM WALLS, was convicted on February 18, 1993 in the

Circuit Court of Cook County for the sexually violent offenses of Aggravated Criminal Sexual

Assault, case number 92 CR 16471, and was subsequently sentenced to 15 years (consecutive to

7 years for Robbery in case number 91 CR 28405) of incarceration in the Illinois Department of

Corrections (A certified copy of conviction is attached as Exhibit A and incorporated by

reference herein);

2. That Respondent, WILLIAM WALLS, is presently serving said sentence in the Illinois

Department of Corrections, at the Robinson Correctional Center, and is scheduled for entry into

mandatory supervised release on March 9, 2003;

3. That as described in the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV), Respondent WILLIAM WALLS has the following mental disorders:

Axis I:   Paraphilia, Not Otherwise Specified, Non-consenting Persons, Females
          Alcohol Abuse, In a Controlled Environment

Axis II:  Antisocial Personality Disorder
          Borderline Intellectual Functioning

Axis III: None

Axis IV:  Problems related to interaction with the legal system/crime.

Axis V:   Global Assessment of Functioning: 55

4. That Respondent, WILLIAM WALLS, is dangerous to others because his mental disorders create a substantial probability that he will engage in acts of sexual violence in the future. This conclusion results from an evaluation of the Respondent's past history of sexual exploitation and his failure to come to an understanding of his own offensive style.

5. That Respondent, who is 34 years of age, was charged in his most current offense in 1992 for having abducted a 13 year old girl while she was walking to school and having forced his penis into her anus.

6. That Respondent was found delinquent in case number 81 J 18270 for the offense of battery in 1981

7. That respondent was found delinquent in case number 81 J 19063 for the offense of battery in 1981

2. c7 4.

76

8. That respondent was found delinquent in case number 81 J 761 for the offense of

battery

9. That respondent was found delinquent in case number 82 J 762 for the offense of

battery

10. That respondent was found delinquent in case number 82 J 763 for the offense of

battery

11. That Respondent has refused to acknowledge any responsibility for these incidents

and has essentially denied that they ever happened. During a conversation with Dr. Jacqueline

Buck, Respondent stated that he was not guilty of the instant offense, and further stating that it

was "bogus." Respondent engages in a pervasive pattern of denial and lack of empathy for his

victims. Instead, Respondent presents himself as the victim of the criminal justice system.

12.    Respondent's Public Act 90-0400 Evaluation, prepared by Dr. Jacqueline Buck,

Ph.D., Clinical Psychologist, Illinois Department of Corrections was conducted on January 23,

2003, and is attached hereto as Exhibit B and incorporated by reference herein.

**WHEREFORE**, the People of the State of Illinois respectfully request that this

Honorable Court:

1.     Find that there is cause to believe that Respondent is eligible for commitment

pursuant to 725 ILCS 207/35(f), Section 40.


Respectfully submitted,

**LISA MADIGAN**
Attorney General

BY:

**MICHAEL KRESS**
Assistant Attorney General


**SHAUNA BOLIKER**
Assistant State's Attorney


Michael Kress
Assistant Attorney General
100 W. Randolph 12th floor
Chicago Il. 60601
3122-793-1473
Fax 312-814-5366


4.04.4.

03/06/2003 10:46 FAX 7736884440     STATE'S ATTY'S 12D WING     Ø 008

## SEXUALLY VIOLENT PERSONAL COMMITMENT ACT
## PUBLIC ACT 90-0040 EVALUATION
## ILLINOIS DEPARTMENT OF CORRECTIONS

**NAME:**                         William Walls

**IDOC NUMBER:**                  B40723

**DATE OF BIRTH:**                2/14/69

**DATE OF EVALUATION:**           1/23/03

**SITE OF EVALUATION:**           Robinson Correctional Center

**COMMITTING COUNTY:**            Cook

**RELEASE DATE:**                 3/9/03

**EVALUATOR:**                    Jacqueline N. Buck, Ph.D.

*(Exhibit 2) [handwritten annotation illegible] here refer whole report of*

**REFERRAL ISSUE:**

Mr. Walls was referred by the Illinois Department of Corrections (IDOC) for a psychological evaluation to determine whether he meets the criteria for commitment under Public Act 90-0040, the Sexually Violent Persons Commitment Act.

**PROCEDURES:**

A review of the materials located in the Illinois Department of Corrections Master File was conducted. After the completion of a case conference with the other clinical psychologists in the Special Evaluation Unit, arrangements were made by this evaluator to interview Mr. Walls at the Robinson Correctional Center. After introducing myself and explaining my job in the Illinois Department of Corrections, Mr. Walls was given an explanation concerning the purpose of the proposed clinical evaluation. He was informed that a written report of the evaluation would be provided to the Office of the State's Attorney General and to the Office of the County State's Attorney, if it appeared that he met the criteria as listed in this Act, for consideration for civil commitment. He also was informed that this evaluator would be called to testify in court regarding the content of this clinical evaluation should a petition be filed in his county of conviction to find him as a sexually violent person as defined in this law.

Mr. Walls expressed his understanding of the purpose and process of this clinical evaluation. He understood that he had the right to refuse to participate in the evaluation. He also understood that if he agreed to participate in this clinical interview, he did not

have to answer any questions that he did not feel comfortable answering. Mr. Walls did not agree to participate in the clinical interview. This report was prepared using the information available in the IDOC Master Files for Mr. Walls.

## CLINICAL OBSERVATIONS:

While Mr. Walls ultimately refused to participate in the structured clinical interview, he did talk to this evaluator for approximately 30 minutes to explain why he was refusing the clinical interview. Several times during that half-hour conversation, he agreed to the clinical interview and then would immediately change his mind and again refuse.

Mr. Walls presented as oriented to person, place and time. He displayed no symptoms indicative of hallucinations, delusions or significant mood disorders. His mood was intense and angry as he vehemently declared his innocence for his predicate sexual offense. While his verbalizations displayed many cognitive distortions, these did not rise to the level of a thought disorder, such as schizophrenia.

Throughout the half hour spent with Mr. Walls, he repeatedly stated that he was not guilty for the current sexual offense and referred to it as "bogus." He insisted that he "did not have a fair trial" since he had had a bench trial and "only one person deciding my fate." He repeatedly stated that he has "suffered all kinds of stuff as a result of this case" and displayed anger by voice tone and manner. He could not explain to me what his "suffering" was about. He insisted that he did "not have an opportunity to defend myself in court and present my case."

Mr. Walls repeatedly stated that among the reasons why he did not want to participate in this clinical interview was that "it's too painful" but he could not explain to me what he meant by that. He also stated that he didn't want to appear to be validating his current conviction by agreeing to participate.

Mr. Walls stated that he had appealed his sexual offense case to the U.S. Supreme Court based on "denial of due process" and "equal protection of the laws" but that Court refused to hear his case because of a "technicality", according to his report. He also mentioned several times that he had the papers under his bunk and brought me the legal papers to which he was referring. I made a copy for his Master File. These documents would be available to all who read this report in the future.

## RELEVANT HISTORY AND OFFENSE DATA:

Mr. Walls has a history of sexual offending and other criminal activity in Cook County that includes the following offenses:

( Exhibit .3. attached )
( of whole report )

1. 07.1.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

IN RE THE COMMITMENT OF: )
)
WILLIAM WALLS, )     No. 03 CR· 8000 7
IDOC #B40723, )
                     Respondent. )

*(Exhibit A)*
*Attached here and*
*Made report ct*

**SUMMONS**

**TO RESPONDENT:**

William Walls IDOC #B40723
Robinson Correctional Center
Robinson, Illinois 62454

**YOU ARE HEREBY SUMMONED AND REQUIRED TO APPEAR** before the
Honorable William Wood, Judge of the Circuit Court of Cook County, Illinois, in Room 101,
2600 S. California, Chicago, Illinois at 9:30 A..M. on March 10, 2003 for appearance on the
Petition for Sexually Violent Person Commitment filed herein, a copy of which is hereto
attached.

**TO THE OFFICER:**

This summons must be personally served before the time stated therein for appearance.
The summons must be returned by the officer to whom it was given for service, with affidavit of
service and fees, if any, immediately after service.

WITNESS: *March 6*                , 2003

*Dorothy Brown as*
DORTHY BROWN
Clerk of the Court

Michael Kress
Assistant Attorney General
100 W. Randolph-12th Floor
Chicago, Illinois 60601
312-793-1473-FAX 312-814-5366

MARGARET SCHADT
**FILED**
MAR 0 6 2003

**DOROTHY BROWN**
CLERK OF CIRCUIT COURT

1. of 1.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

IN RE THE COMMITMENT OF:      )
      )
WILLIAM WALLS,      )    Case No. 03 CR-800 *U 1*
IDOC #B40723      )
      Respondent.    )

( *Exhibit 5* )

## ORDER FOR DETENTION

The Court, having reviewed the Petition for Sexually Violent Person Commitment filed by the People of the State of Illinois with attached exhibits, hereby determines that there is cause to believe that the Respondent, WILLIAM WALLS, IDOC #B40723, is eligible for commitment under subsection (f) of Section 35 of the Sexually Violent Persons Commitment Act, 725 ILCS 207, and accordingly:

**IT IS HEREBY ORDERED** that the Respondent be detained by the Illinois Department of Corrections and that the Illinois Department of Corrections shall transfer the Respondent to a detention facility approved by the Department of Human Services upon release from the Department of Corrections;

**IT IS FURTHER ORDERED** that a Probable Cause hearing shall be held in this matter on _____*3-10-03*_____, 2003 at __9:30 a.m. in Courtroom 101 of the Circuit Court of Cook County, 2600 S California Chicago Il. 60608;

**IT IS FURTHER ORDERED** that the Illinois Department of Corrections or the Illinois Department of Human Services shall transport the Respondent to the Probable Cause Hearing in accordance with this order;

**IT IS FURTHER ORDERED** that _____ is appointed as counsel for the Respondent in this cause;

**IT IS FURTHER ORDERED** that:

_____

_____

_____

_____

ENTERED

TIME _____ AM/PM

MAR 06 2003

Judge William Wood
Dorothy Brown
Clerk of the Circuit Court
Criminal Division

_____
JUDGE

1. 07.1.

( STATE OF ILLINOIS )
(                  ) SS.
( COUNTY OF COOK    )

IN THE CIRCUIT COURT OF COOK COUNTY, COOK COUNTY CRIMINAL DIVISION


IN RE THE DETENTION OF :                )
                                        )
WILLIAM WALLS,                          ) HONORABLE JUDGE CANNON
                                        ) CASE NO. 03-CR-80002
RESPONDENT                              )
                                        )

(Exhibit 6)
Attached and wole
report of.

            CERTIFICATE OF SERVICE AND NOTICE

TO: THE HONORABLE JUDGE CANNON          FROM: WILLIAM WALLS
RM: 208#                                JOLIET ANNEX, IDHS-TDF
2600 SOUTH CALIFORNIA AVE.              401 WOODRUFF RD.
CHICAGO, ILLINOIS. 60608.               JOLIET, ILLINOIS. 60432-1288

Dear Ms. Cannors,

A Respondent under the Act may be deprived of his physical liberty. If he lose's the
litigation : The Illinois rules of professional conduct, RPC 1.2 (a), state's
a lawyer shall abide by a client's decision concerning the objective of representation,
subject to paragraph (c)(d), and (e), and shall consult with the client as to
the means by which they are to be pursued. To avoid any future conflict with attorneys
I would like to stat the following;

1). I'm requesting to stick with the same stragedy defense that was pursued prior
to probable cause stage at pre-trial stage.

2). I'm requesting to avoid the argument of procedure default by the state's
attorney office that the respondent would like to raise the claim of actual
innocence of his adult conviction prior to probable cause and at pre-trial stage.
( Case no. 92-CR-16471).

3). That the respondent do not wish to sign a waiver of his juvenile records.

4). I'm requesting to avoid the argument of procedure default by the state's
attorney office, that the respondent would like to raise all the issue's at
pre-trial stage that was raised prior to probable cause or prelimary hearing.

5). The respondent request not to participate in any evaluation before probable
cause or at pre-trial stage unless it's a non-examining expert witness. To participate
in any evalautions at probable cause stage or pre-trial stage would give the
state's attorney approval to use the juvenile records.

6). If probable cause is found and respondent goes to trial that respondent
request that his attorney makes objections to any attempts to use his juvenile records
by the state's attorney.

I William Walls, do swear or declare as required by the Illinois Supreme Court
Rule, that I have served a copy of this Notice To; Micheal Kress, Assistance
Attorney General. 100 W. Randolph-12th fl. Chicago, Illinois. 60601. By placing
threw the mailing system at IDHS-TDF an envolope containing aformation.

( Exhibit 6 )

I Decalre under the penalty of prejury
that the forgoing is true and correct.
Executed on 12.8. , 2004.

PUBLIC NOTARY

Sworn to before me this 8

day of December 2004.

OFFICIAL SEAL
FRAN ADEN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/01/08

2 of 2

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
CRIMINAL DIVISION-COUNTY DEPARTMENT

( Exhibit 7 )

IN RE THE COMMITMENT OF:            )
                                    )
WILLIAM WALLS,                      )        No. 03CR- 80002
                        Respondent. )

## STATE'S RESPONSE TO RESPONDENT'S MOTION TO DISMISS THE PETITION DUE TO THE PETITION BEING BROUGHT IN BAD FAITH AND WITHOUT GOOD CAUSE

Now come the PEOPLE OF THE STATE OF ILLINOIS by LISA MADIGAN, Attorney General of the State of Illinois, through Michael Kress, Assistant Attorney General, and through RICHARD DEVINE State's Attorney of Cook County, by Mary Ellen Murphy, Assistant States Attorney and moves for this court to deny Respondent's Motion to Dismiss the State's Petition due to the Petition Being Brought in Bad Faith and Without Good Cause leave and in support thereof states as follows:

1.   That on November 12, 2003 Respondent filed a Motion entitled LEAVE TO AMEND OR MOTION TO BAR THE USE OF JUVENILE RECORDS.

2.   That on November 12, 2003 this Court denied Respondent's motion based on 705 ILCS 405/1-7 (A)(9) which allows the disclosure and use of Juvenile Record in a Sexually Violent Persons Commitment Proceeding.

3.   That on December 18, 2003 Respondent filled the above captioned motion alleging the same grounds alleged in the previously denied motion.

4.   That 705 ILCS 405/1-7(A)(9) on this date still allows the use and disclosure of the records Respondent complains of in this, a Sexually Violent Persons Commitment, matter.

1

( Exhibit 7 )

( Exhibit. 7 )

**WHEREFORE**, the People pray that this Honorable Court deny Respondent's Motion to Dismiss the State's Petition Due to the Petition being brought in Bad Faith and Without Good Cause and for other relief that the Court finds equitable

Respectfully submitted,

LISA MADIGAN
Attorney General

RICHARD DEVINE
State's Attorney

BY: _____
Michael Kress
Assistant Attorney General

BY: _____
Mary Ellen Murphy
Assistant State's Attorney

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served by enclosing said copies in an envelope with postage fully prepaid, and be depositing said envelope in a U.S. Post Office Mailbox in Chicago, Illinois, on the 5th Day of January, 2004. Service was made in this manner upon the following person at the accompanying address:

William Walls
IDHS SOT&DC
401 Woodruff Rd.
Joliet, Il. 60432

_____
Michael Kress
Assistant Attorney General

100 W. Randolph
12th Floor
Chicago, Il. 60601

( Exhibit. 7 )

2. of 2.

( Exhibit 7.8 )

( STATE OF ILLINOIS )
(                    ) SS.
( COUNTY OF COOK     )

IN THE CIRCUIT COURT OF COOK COUNTY, COOK COUNTY DEPARTMENT CRIMINAL DIVISION

IN RE THE DETENTION OF :              )
                                      )
WILLIAM WALLS,                        )    HONORABLE JUDGE CANNONS
                                      )
RESPONDENT                            )    CASE NO. 03-CR-80002
                                      )

## CERTIFICATE OF SERVICE AND NOTICE

To: The Honorable Judge Cannons            From: William Walls
Rm: 208#                                   Joliet Annex, IDHS-TDF
2600 S. California ave.                     401 Woodruff Rd.
Chicago, Illinois. 60608                   Joliet, Illinois. 60432-1288

Dear Ms Cannons,

A respondent under the Act may be deprived of his physical liberty. If he lose's the litigation. The Illinois rules of professional conduct, RPC Rule 1.2 (a), state's a lawyer shall abide by a client decisions concerning the objective of representation, subject to paragraph (c)(d), and (e) and shall consult with the client as to the means by which they are to be pursued. To avoid any future conflicts with attorneys I would like to state the following please;

1). I do not wish to file motions in reference to Dismiss the state's petition Due to Probable Cause being held within 72 hours.

2). The state argue's that they are allowed to use the juvenile records under 705 ILCS 405/1-7(A)(9), the state refuse to acknowledge that this law can only be used in agreement with rule 725 ILCS 207/10(2), under section 5/20 of the juvenile court act of 1987 or now repealed of section 5-620 of the act., I would like for this to be amend to the argument of the reconsider motion to dismiss the state's petition due to the petition being brought in bad faith and without good cause.

3). When sharing ideals for our defense that I be giving enough time to think over the issue's, and not spring the ideal's only days before we go to court. ( That deprive's me of an opportunity to properly think over my defense.

4). I would like to be giving the opportunity to review all motions before they are filed, also I would like to be provide with a copy of all motions before they are filed.

I William Walls, do swear or declare as required by the Illinois Supreme Court Rule, that I have served a copy of this Notice: Micheal Kress, Assistance Attorney General. 100 W. Randolph-12th fl. Chicago, Illinois. 60601. By placing threw the mailing system at IDHS-TDF an envelope containing the aformation.

I declare under the penalty of perjury, that the forgoing is true and correct. Executed on __11-29-__ , 2004.

OFFICIAL SEAL
FRAN ADEN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/01/08

PUBLIC NOTARY
Sworn to before me this, 29 of November, 2004.

1. of 1.

FILED
CR-208
MAR 31 2008
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

( STATE OF ILLINOIS )
(                    ) SS.
( COUNTY OF COOK     )

IN THE CIRCUIT COURT OF COOK COUNTY, COOK COUNTY CRIMINAL COURT
DIVISION

( Exhibit 7.9 )

IN RE THE DETENTION OF:     )
WILLIAM WALLS,              )
RESPONDENT (S).             ) THE HONORABLE JUDGE CANNONS
                            )
V.                          ) CASE NO. 03-Cr-80002
THE STATE OF ILLINOIS       )
PETITIONER (S).             )

## NOTICE AND CERTIFICATE OF SERVICE

TO:                         FROM: WILLIAM WALLS
                            IDHS-TDF
                            R.R, Box 6-A
                            Rushville, Illinois.
                            62681.

The Respondent would like to present the issue of Imminent Danger
to the Trial Court and his Attorney.

Bart V. Telford, 677 f.2d. 622(7th. Cir 1982), Campaign of physical,
mental hardships and retaliations. Nat'l Eng'g Contracting co.
V. Herman, 181 f.3d. 715 723 (6th. Cir 1999), Where Vindictive
prosecution involves(1). Exercise of a protected right: (2).
The prosecutor's Stack in the exercise of that right; (3). The
unreasonableness of the prosecutors conduct; (4). That the prose-
cution was initiated with the intent to punish the respondent
for the exercise of the protected rights. Borderkirker V. Hayes
434 U.S 357, 363(1978), To punish a person because he has done
what the law plainly allows him to do is a due process violation
of the most basic sort, and for an private agency of the state
to pursue a coarse of actions whose objective is to penalize
a person reliance on his legal rights is unconstitutional. U.S..V.-
Carter, 130 f.3d. 1432, 1443(10th. Cir 1997), the prosecutor
may not punish the respondent for exercising constitutional
or statutory rights. U.S. V. Lanoue, 137 f3d. 656, 664(1st.
Cir. 1998), Where Vindictive prosecution are most common when
a respondent advance's in some procedural or constitutional
right and is then punished for doing so. U.S V. Garza-Juarez,
992 f.2d 986, 907 (9th Cir. 1993), Where Vindictive Prosecution
exist when government brought more seriuos charges to stop his
release from IDOC and the IDHS-TDF. Neal V. Cain, 141 f.3d.
207, 214(5th. Cir. 1998), Where a state prosecutor brings additional
charges also to punish the respondent for exercising his procedural
rights U.S. V. Miller, 948 f.2d, 631 633(10th. Cir. 1991), Where
Vindictiveness is also displayed when the respondent successfully
attacks his conviction or case and then receive's A unofficial
Death Sentence. U.S V. Montoya, 45 f. 3d. 1286, 1299(9th. Cir
1995), mere filing of the petition under the S.V.P act, Case

No. 03-CR-80002, can support Vindictive prosecution charge Henderson V. Dept of pub safety and Corr, 901 f.2d 1288, 1296 (5th. Cir. 1990), facts sufficient if would convince a reasonable man of extra-judicial biasness. N. Marian Island V. Mendoila, 976. f.2d. 475,486-87(9th Cir. 1992), Prosecutor's discussion with the IDHS-TDF outside court proceedings. That if the respondent is acquitted, that the respondent would walk out the door and sue us for the wrongful convictions and illegal detention. This was plainly designed to appeal to passions, fears and vulnerabilities of the state prosecutors to the IDHS-TDF, that If, the IDHS-TDF, don't help them stop the respondent. That the respondent will be acquitted and released and pursue law suit against us. Coolidge V New Hampshire 403 U.S. 443, 450(1971) state prosecutors not neutral and detached when actively in charge of investigation of the respondent at the IDHS-TDF, threw the use of eavesdropping device'S and eletronic communications. And also acting as state prosecutor in his court proceedings Case No. 03-CR-80002. In Shadwick V City of tampa, 407 U.S 345(1972), the Supreme Court explaned that whatever else neutrality and detachment might ential it is clear that they require severance and disengagement from activities of law enforcement officers. 18 U.S.C 2510 (7), 2518(1)(a), Five circuit have held that prison and detention's Facilitys official's are investigative or law enforcement officers under 2510(7). Anaya V. Crossroads Managed Care Syst., 195 f.3d. 584, 596 (10th Cir. 1999)(private detoxication facility considered state actor when working in conjunction with official state actors to illegally detain individuals in there facility, Jensenn V. Lane County, 222 f.3d. 570, 574-75(9th. Cir.2000), private party psychiatrist considered state actor during process of evaluating and detaining individuals who are believed to be mentally ill because the psychiatrist and state prosecutors intertwine in the determination. Lugar V. Edmondson oil Co., 457, U.S. 922, 937 (1982), FIrst, the claimed deprivation must be caused by another's exercise of right or privilege created or imposed by the state or undertaken by a person for whom, the state is responsible. See id. Second, under the facts of the instant case, the private party must be fairly characterized as a state actor. Second, the court has held that to act under color of state law a defendant need not be an officer of the state; it is sufficient that he or she is a willful participant in jointly activity with the state or it's agents. Adickes V.SH. Kress Co. 398, U.S 144, 152(1970), See, e.g, Abbott V. Latshaw, 164 f.3d. 141, 147-48(3d.Cir.1998)private party who conspires with state actors to deprive another of his or her constitutional rights acts under color of state law. Third, the court has held that private persons who are authorized to exercise state authority are deemed to be acting under color of state law. West V. Atkins, 487, U.S. 42,54-55(1988),the court has held that misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law is action taken under color of state law. Deshaney V. Winnebago county dept-t of soc servs. 489, U.S. 189, 199-200(1989). When the state takes a person into it's custody and holds him there against his will, the constitution imposes upon it a corresponding duty to assume some responbility for his safety and general well-being, the affirmative--

duty to protect arises from the limitation which it has imposed
on his freedom to act on his own behalf Due-process clause affords
pre-trial detainees protections similar to those afforded prisoners
by 8th amendment), GUTIERREZ V. City of San Antonio, 139, F.3d.
441, 452(5th. Cir . 1998). PRE-TRIAL DETAINEE PROTECTED BY DUE
PROCESS CLAUSE OF 5TH OR 14TH AMENDMENTS. Zentmyer V. Kendall
County, 220F.3d. 805, 810(7th Cir 2000)( 14th amendment due
process clause protects pre-trial detainees under same standard
as 8th amendment.Spencer V. Knapheide Truck Equip, 183, f.3d.
d. 902, 905(8th. Cir 1999)(due process rights of pre-trial detainee
are at least as great as 8thamendment rights of convicted prisoners.
Kulas V. Valdez, 159 f.3d. 453, 455-56(9th Cir. 1998), the rights
of pre-trial detainee must be analyzed under the due-process
clause rather than the eighth amendment because the detainee's
guilt has not yet been adjudicated. /Mclligott V. Foley, 182
f.3d. 1248, 1252(11th Cir. 1999) prison officials not entitled to
qualified immunity where deliberate indifferent to serious
medical need of persons.In Richardson V. McKnight, the Supreme
court held that prison guards employed by a private prison manage
ment firm were not entitled to qualified immunity because there
is no firmly rooted tradition of immunity for private employees
exercising government functions and because the immunity doctrine's
purpose were not served by providing immunity to such individuals.
Hudson V. City of New Orleans, 174f.3d. 677, 682(5th. Cir. 1999)(
District Attorney's not considered arm of state of louisiana
and therefore subject to suit. Brown V. Bryan County 219, f.3d.
450, 453(5th CIr. 2000), City not immune when constitutional
deprivations resulting from chief probation office's decisions
because probation officer had policy making authority. Marsh
V. Butler County, Ala, 225 F.3d. 1243, 1253 (11th. Cir. 2000).
County may be liable in action by juvenile who was raped and
tortured by other juveniles while held as a pre-trial detainee,
whether or not county was aware of conditions leading to assault.
However, in Kalina V. Flether, the Suprema court held that,
although a prosecutor is absolutely immune from suit regarding
conduct in connection with the preparation and filing of charging
decuments, he or she is not absolutely immune with respect to
actions outside of trial, such as the execution of certification
for determination of probable cause. 522 U.S. 118, 126(1997);522,
U.S 118; 126(1997). Smith V. Garretto, 147, f.3d. 91, 94(2d.
Cir 1998), prosecutors not absolutely immune for orchestrating
sting operation Allen V.Lowder, 875 F. 2d. 82, 85-86 (4th. CIr.
1989), prosecutors not absolutely immune in suit alleging that
prosecutors attempted to secure continued incarceration of respondent
due to being entitled to acquittal of S.V.p act, case because
prosecutor acting in administrative capacity. Hughes V. Tarrant
County 948 f2d. 918, 923(th Cir. 1991), prosecutor not absolutely
immune for advice given to the IDHS-TDF,off the records outside
court proceedings. That If, the IDHS-TDF DON'T do something
that the respondent will be released and sue all of us. The
supreme court held that preiser does not bar a claim where an
inmate seeks an injunction requiring a hearing to determine
whether ther was probable cause for pre-trial detention. Meachum
V. Fano, 427 U.S. 215 (1976). Individuals have no rights to
remain in a particular institution and may be transferred for
administrative reasons.

Winship, 397 U.S. 358, 364(1970), The reasonable doubt standard
applies in both state and federal proceedings. See Sullivan
V. Louisiana, 508 U.S. 275, 278( 1993). The winship reasonable
doubt standard protects three interests first, it protects
the respondent's interest in being free from unjustified loss
of liberty. 397 U.S.at 363 Second, it protects the respondent
from the stigmatization resulting from conviction. Seeid. Third
it engenders community confidence in the criminal law by giving
concrete substance to the presumption of innocence. The burden
of proof consist of two parts the burden of production and
the burden of persuasion. The burden of production requires
producing enough evidnce to put a fact in issue. The burden
of production is usually borne by the party who first pleads
the existence of a fact not yet in issue, but can shift from
one party to another. If a party fails to sustain it's burden
of production that party is subject to an adverse ruling by
the court for instance the prosecution has the burden of production
on every element of the offense charged If, The government fails
to produce sufficient evidence for any element the respondent
must be acquitted, Case no. 03-CR-80002, Here the state prosecu-
tors has presented a falsehood and allowed that falsehood to
continue even when it appeared. When a falsehood appears and
it's determinative to the respondent's guilt or innocence's
and the state prosecutors let that falsehood to continue. It
denys the respondent due process and equal protection of the
laws. Giglio V. United States, 405 U.S.150, 154-55,(1972),
Imminent Danger exist where he clearly should be acquitted, Case
No. 03-CR-80002. And the state prosecutors in this case has Vind.
ictively presented a falsehood to the court to further his incar-
ceration. But respondent showed it was a malicious attempt to have
the respondent committed with the use of confidential information
in violation of state laws. The state prosecutors became aware of
the potential law-suits and let the falsehood continue to further
his detention. Where the IDHS-TDF, the private state facility can
use physical and mental hardships to: force commitment under the
S.V.P act, 03-CR-80002, and, (2) Bring death to the respondent to
erase the cost of malicious prosecutions. Again, the respondent has
presented a case where he should've clearly been acquitted. This
was even established before the probable cause hearing, and even
now at pre-trial stage. Also, from the vary beginning, the state
prosecutors lacked probable cause to even file the petition against
the respondent. This is clear evidence that the filing of the
petition was Vindictive. Here and now at the pre-trial stage the
case wont move forward because the state refuse to accept acquittal
of the case. Here the respondent present's a case where the out
come is in his favor. And a delay is being presented to give the
IDHS-TDF, enough time to circumvent the issue.

## CASE PRESENTED

(1). On July 12, 1992; the respondent was charged and convicted
of a aggravated criminal sexual assault that he did not commit,
Case no. 92-CR-16471.

(2). In this case, the respondent presented an aliba defense
and witness's was ignored by the respondent public defender
and state prosecutor-

4-of-8.

- in this case. CAse No. 92-CR-16471.

(3). That due to this, the state prosecutor was able to gain there conviction in this case, based on false testimony, Case NO. 92-CR-16471.

(4). On appeal, with newly discovered evidence's the respondent was able to display his innocence's But, was denied due process of the laws. Case No. 92-CR-16471.

(5). The respondent was sentence's to serve (22) years in the Illinois Department of Corrections, Adult Division. Case No. 92-CR-16471.

(6). The respondent release date was March 9, 2003; this was the respondent's first time incarcerated as an adult. Case No. 92-CR-16471.

(7). Upon the respondent's release date at the Robinson Correctional Center on or about Feb 2, 2003;

(8). The respondent was visited by a state evaluator for the purpose of the S.V.P act law, 03-CR-80002.

(9). The name of the evaluator was Ms. Jacqueline Buck, PH. D, for the state.

(10). The respondent did not participate in the evalaution attempted by the state evaluator Ms. Jacqueline Buck, Case No. 03-CR-80002.

(11). Due to the request of Ms. Jacqueline Buck, Ph. D, evaluator for the state, she was given a complete copy of the respondent's case in which he was able to display his innocence's with newly discovered evidence's, Case No. 92-CR-16471.

(12). This case file was placed on the Illinois Department of Corrections Masterfile Case No. 92-CR-16471.

(13). Ms. Jacqueline Buck, drafted a petition and recommended that the respondent be petitioned under the S.V.P act, Case No. 03-CR-80002.

(14). Ms. Jacqueline Buck, petition was based on the respondent's Illinois Department of Corrections Masterfile the (1)-one adult conviction, Case No. 92-CR-16471 and juvenile records.

(15). The Cook County state's attorney Ms Mary Ellen Murphy and the assistant attorney Mr. Micheal Kress in charge of the S.V.P act, petitions.

(16). Accepted Ms. Jacqueline Buck's petition and filed the petition against the respondent to be tried under the S.V.P act, Case No. 03-CR-80002.

(17). The respondent was order to be detained at the IDHS-TDF and to stand for probable cause as a pre-trial detainee.

- before the honorable chief judge William woods at the Cook
County Criminal court's building Room. 101.

(18). On the respondent's first appearance before the honorable
chief judge William Woods, the respondent filed a motion for
Substitution of judge by Right, the motion was Granted.

(19). The respondent was transferred to two (2). other judges
before he was appointed the honorable judge Ms. Cannors, Room:
208.

(20). Before probable cause hearing the respondent filed a notice
with the court given notice, Certified Notice that he does not
wish to sign a waiver or give approval for the use of his juvenile
records.

(21). The respondent then moved to file his extra-ordinary motion
this was also before probable cause hearing. The motion to Dismiss
the state petition due to the petition being brought in bad
faith and without good cause.

( Wong Sun V. U.S., 471, 479 (1963)(It is basic that an arrest...
must stand on firmer ground than mere suspicion).
Court may order prosecutor to face judgement of acquttal.

( U.S V. Lawrence, 179 F.3d 343, 347(5th Cir. 1999)(Prosecutor
decides whether to bring charges and what charges to bring.
See Wayte, 470 U.S at 607; see, e.g U.S V. Sanders, 211 F.3d
711, 720 (2d Cir 2000) Decision to prosecute in prosecutor's
discretion as long as probable cause exist. ( they later)
( Some of evolution need to be presented here)

Again, this was all done before probable cause hearing, the
argument of state laws pointed out in his extra ordinary motion
that 730 ILCS 5/3-2, (B), there shall be a department of juvenile
justice which shall be administrated by a director appointed
by the governor under the civil administration code of Illinois.
The department of juvenile justice shall be resonsible for all
persons under 17 years of age when sentence to imprisonment
and committed to the department under subsection/(c) of section
5-8-6 of this 5-750 of that juvenile court act of 1987. Person
under 17 years of age committed to the department of juvenile
pursuant to this code shall be Sight and Sound Separate from
Adult offenders committed to the department of corrections.
720 ILCS 207/10(2), says that the respondent must be found del-
inquent under section 5/20 of the juvenile court act or of (now
repealed), section 5-620 of that act. 705 ILCS 405/1-7 (B)(1),
no law enforcement officer or other person or agency may knowingly
transmit to the department of corrections Adult Division or
Federal Bureau of investigation any fingerprints or photograph
relating to a minor who has been arrested or taken into custody
before his or her 17th birthday. Rule 705 ILCS 405/5-905-(5),
states that the records of law enforcement officers, concerning
all minors under 17 years of age must be maintained separately
from the records of adults. Rule ILCS 705/5-915-(4), says that upon

the entry of an order expunging records or files the offense
in which the records files concern shall be treated as if it
never occurred. Law enforcement officer and agencys shall properly
reply that no file exist with respect to that person. Here, before
probable cause hearing the respondent presented a case where
probable cause should not have been found. And again, here and
now, at the pre-trial stage has established that: (1). That he
does not sign a waiver for the use of his juvenile records. This
was done in court before the judge, state's attorney and the
respondent's attorney. Plus, they all were served a Certified
Notice in reference's to it, filed at the court.(2). He does
not wont to participate in any evaluations. Which would also equal
to a waiver of his juvenile records. Again, this was also done
before probable cause hearing/and also has been stipulated on
records. The respondent has even had this issue of the evaluation
stipulated on records where the respondent is detained as a pre-
trial detainee. The respondent has repeatly established this
clearly on all records over and over again. As result of this,
not only before probable cause But, even after at the pre-trial
stage has placed the state prosecutors under the S.V.P act in
a hardship to proceed. Where the state prosecutors can not proceed
with confidential information that's in violation of state laws.
This information is confidential and the respondent has not and
will not give anyone his approval to use it. This makes the outcome
of the proceeding in the respondent's favor. where the respondent
has placed the state prosecutors Under the S.V.P act in a hardship
to proceed to trial. If, the state prosecutors fails to produce
sufficient evidence for any element, the respondent must be acquitted,
Sullivan V. Louisana 508 U.S. 275, 278(1993). Case no. 03-CR-80002.
Here, the state prosecutors lacks probable cause to even bring
a S.V.P act, petition against the respondent Because the respond-
ent DID NOT participate in the evaluation attempted by Ms. Jacque-
line Buck PH.D, evaluator for the state. While the respondent
was still incarcerated in the Illinois Department of Corrections.
And had not given anyone the approval to use this confidential
information. Although, there was a lack to find probable cause
to even file the petition against the respondent. The state prose-
cutors still filed the petition against the respondent to have
him tried under the S.V.P act Case no. 03-CR-80002 See Wayte,
470 U.S at 607; see, e.g.U S V. Sanders, 211 F.3d 711, 720 (2d
Cir 2000) Decision to prosecute in prosecutor's discretion as
long as probable cause exist. And when respondent showed before
probable cause hearing, that the petition filed against the respo-
ndent. ( In his extra ordinary motion ); was being brought in
Bad Faith and without good cause. And that the petition was a
malicious attempt to have the respondent committed with the use
of juvenile records, that's in violation of state laws. The state
prosecutors let the falsehood continue to pre-trial stage, where
the respondent should've been acquitted before the probable cause
hearing. The Court may Order prosecutors to face judgement or
acquittal. As stated before the state prosecutors lacked probable
cause from the vary beginning to even file a S.V.P act, petition
against the respondent. The case is now at a stand still, where
the state can not move forwards. Where a delay is being presented
only meant to: (1). Vindictive Prosecute the respondent and,
(2). Bring Death to the respondent to erase the cost of potential
law suits for the malicious prosecution cases, No, 92-CR-16471
and 03-CR-80002.

Here and now the respondent life is in imminent danger. Vitek
V. Jones, 445 U.S 480, 493 (1980), the respondent has a liberty
Interest In remaining free from involuntary committment.
Kirby V. James, 195 F.3d. 1285,1291(11th. Cir 1999),the respondent
has a liberty intreest in not being branded a sex offender.
Burton V. Livingston, 791 F. 2d. 97, 100(8th. Cir 1986),the respo-
ndent also have a liberty interest in freedom from terror of instant
and unexpected Death.
( 725 ILCS 207/30 Detention, (a). Upon the filing of a petition
under section 15 of this act, the court shall review the petition
to determine whether to issue an order for detention of the person
who is the subject of the petition. The person shall be detained
only if there is cause to believe that the person is eligible for
committment under subsection (f) of section 35 of this act.
725 ILCS 207/35 Trial. (f). If the court or jury is not satisfied
beyond a reasonable doubt that the person is a sexually violent
person, the court shall dismiss the petition and direct that
the person be released unless he or she is under some other
lawful restriction.

```
                ILLINOIS DEPARTMENT OF CORRECTIONS          PAGE   1
                  OFFENDER TRACKING SYSTEM   RM        RUN DATE  02/22/02
                  VERIFICATION OF INCARCERATION         RUN TIME  10.01.19
```

NAME:   WALLS, WILLIAM                    DOC # :   B40723

DATE OF BIRTH:     02/14/1969

HOLDING MITT CUSTODY DATE:                        06/09/1992

DATE ENTERED DEPARTMENT OF CORRECTIONS:           02/26/1993

DATE RECEIVED AT:  BIG MUDDY RIVER                10/08/1997

PROJECTED DATE OF RELEASE FROM CUSTODY:           03/09/2003

TYPE OF RELEASE:  PROJECTED MSR DATE

DESCRIPTION OF OFFENSE:

| INDICTMENT # | OFFENSE | SENTENCE YR MO DA |
|---|---|---|
| 92CR16471 | AGG CRIM SEX ASSAULT/FELONY | 0015 00 0000 |
| 91CR28405 | ROBBERY | 0007 00 0000 |

(Exhibit.10)

Attached oral whole
report of

ADDITIONAL INFO ON PAGE 2

_2-22-02_
    (DATE)

*Stephanie Waggoner /ct*
RECORDS OFFICE SUPERVISOR

BIG MUDDY RIVER          CORR. CENTER

1. of 11.

CC:  MASTERFILE

(Exhibit ___, rather—
heel and made
apart of)

## STATEMENT OF THE CASE

William Walls was charged in Case Number 92-CR-16471 with various sex offenses. Trial was held before the Honorable Themis Karnezis, sitting without a jury. The sole witness to identify the offender of the offense was the victim of the offense, Erica Thurman. The defendant interposed an alibi defense. The defendant was convicted.

Defendant filed a Pro Se motion for a new trial based upon the ineffective assistance of trial counsel, a public defender. Among other things, the Pro Se motion alleged that his attorney had failed to perfect the alibi defense which thereby resulted in the conviction. The motion was denied, and thereafter, the same public defender was allowed to proceed to represent the defendant both with respect to the post-trial motion she had filed and with respect to the sentencing hearing. The defendant was sentenced to fifteen (15) years in the Illinois Department of Corrections.

Erica Thurman,(hereafter referred to as E.T.) testified that she was 14 years old and that on July 7, 1992, she lived at 1335 North Laverne in the city of Chicago.(A-10) On the morning of July 7, E.T., left her home to go to summer school at 6:15am(A-10). She walked through McCall Park, went to Laramie Street and then onto Lockwood until she got to St. John's Temple Church,(A-11). It was there that she first saw the offender.(A-11) At that time, the offender was behind her and she looked back over her shoulder at least twice.(A-12 & A-13) She continued walking and the man ran past her.(A-13) He then stopped running at an alley and E.T. continued walking in that direction.(A-13 & A-14) As she approached the man, she could see that he had his hand under his sweatshirt in the abdominal area. The assailant wore a black sweatshirt with blue Levi's.(A-13) She testified that the man told her to "come on" and that she started to cry.(A-15) The man told her to put her arm around his; he grabbed her hand and walked toward a garage.(A-16) Once at the garage, he opened the garage door.(A-16) They entered the garage through the large doors that a car would drive through.(A-17) There were two cars in the garage, one black and one red.(A-18) The offender told E.T. to bend over the front of the black car.(A-18 & A-19) He then proceeded to search her body. He unbuckled her pants (A-20) and was feeling her body. Then he told her to move to the trunk of the car and stay bent over. The offender pulled down her pants and underwear and she could hear him unzipping his pants.(A-21)

1.07.14.

She testified that the man put his penis in her "rear-end". She felt something running down her legs.(A-22)  The man told her to pull up her clothes, and she did. He then instructed her to check to see if the car door was opened. She checked but it was locked. The man then checked the door himself (A-22) to confirm this.  He then told her to climb over the trunk of the car, which she did.(A-22)  She was in the middle of the garage as the man departed through a side door of the garage.(A-23)  She waited about a minute and walked out the front of the garage which the cars entered and exited.(A-24)  She ran and saw a man in a car and told him she'd been raped. The young man flagged down a police car.(A-24 & A-25)

She testified that she gave a description of the man as having a medium complexion with low cut curly hair and a mustache.(A-26 & A-27)  She did not give height or weight but said the man was wearing dark sunglasses during the entire incident.(A-27 & A-42)

E.T.  testified she left for Alston School at 6:15a.m.(A-10) and that she left her home at 1335 North Lavergne (5000 West).  Five (5) or ten (10) minutes later (A-11) she met the offender who took her to a garage at 920 North Lockwood (5300 West).  She also testifed it takes her twenty (20 to thirty (30) minutes to walk to school every morning (A-41) and that school starts at 8:00a.m.

E.T. also testified she walked maybe four (4) or five (5) blocks before seeing the offender the first time (A-42) and that the offender had walked with her (at St. John's Church A-11) to the garage.  She kept looking back (A-12) at least twice (A-13) and the man ran in front of her.(A-13)

The prosecutor told the Court that State witness Detective Boyle had been involved in a car accident that morning and was presently in the Cook County Hospital in critical condition.  It was Detective Boyle and another Detective (unknown) who had conducted an investigation as to the driving time (A-134 & A-135) from the crime scene to the defendants place of work.  Since the witness could not testify as to the facts, the prosecutor told the Court that it took Detective Boyle eleven (11) minutes to frive from 5300 West Augusta (Lockwood) to 1874 South 54th Avenue in Cicero Illinois.(A-135 & A-136)  The prosecutor then stated he did not know the exact route an alleged perpetrator might take.  (Additionally, we do not know the route taken by the Detective either).

In defense, the defendants time card from his employer showed that he punched the time clock in at 6:58a.m. on July 7th (A-134) but the State argued that no proof had been offered as to who punched in the defendants card.(By the same token, no proof as to the time the victim left her house either).

Also in defense were two eyewitnesses providing alibi's for the defendant. The first was a neighbor to Laverne Bennett and he testified that on July 7th, 1992, he hab observed the defendant and Ms. Bennett arrive at the Bennett residence at 6:30a.m. or 6:35a.m.(A-92)

The second defense witness was Ms. Bennett who testifed that she and the defendant arrived at her residence at 6:40a.m. on July 7, 1992.(A-107) The defendant and she had spent the night together at his apartment the night before and that they had been together all night long until he drove her home the following morning.(A-107 & A-118)  She testified she entered her residence at 6:40a.m.(A-113)  Defendant was wearing a blue t-shirt w/red lettering and grey pants.(A-108)

Testimony of forensic scientist proved to be inconclusive. Joel Schultze testified he ran only blood grouping antigen testing. He told the Court (A-125) that the blood of the perpetrator was as a non-secretor which was consistant with the evidence gathered from the victim but that such test also matched 20% of the entire percentage of the world . . . that is 20% of the men(and also 20% of the women of the world). Absent from his testimony was what type of blood was to be found from the semen samples taken from the panties of the victim.  When the witness was approached with the question, "The evidence in this is conclusive of nothing, is that right?"  The Court agreed over the objection of the State by submitting, "Well yeah. You know, I think that's fair to say."(No blood type of the evidence was offered by the State in rebuttal).

( Exhibit (Q),

## Constitutional Claim

Defense counsel was ineffective and even borderlined on incompetance for the failure to interview and subpoena numerous witnesses necessary for the admition of exculpatory evidence and to properly represent the defendant.

Counsel was required to first become familiar with all the facts surrounding the case prior to trial and investigate all matters within for the mandate of admitting all exculpatory evidence. As a direct result of counsels ineffectiveness and incompetance, the defendant became severely prejudiced by misleading testimony, lack of exculpatory police dispatcher sheets, identification of alleged attacker, and police reports.

These errors (and others) caused the defendant irreputable harm because defendant was repeatedly deprived of numerous opportunities to present exculpatory evidence throughout the case. Had defense counsel performed her duties and functioned properly throughout, the outcome of the trial would have greatly been different. As a result of these errors, defendant has been deprived of his rights to a fair and impartial trial as guaranteed by the Illinois and United States Constitution.

State witness Erica Thurman testified (A-54) that she left her home at 6:15 a.m. for summer school classes beginning at 8:00 a.m.(A-41). Her residence was located at 1335 N. Lavergne (5000 West). She further testified she was assaulted in the garage located at 920 N. Lockwood (5400 West)(A-55). This is a total of nine (9) city blocks or one (1) mile. Thurman testifed she walked said distance in five (5) minutes(A-55). This was a crucial and very misleading factor that mislead trial court that the alleged attack occured around 6:20 a.m.

Defendnat herein attaches an affidavit from Michael Chiappetta of Mid-Central Investigations Inc., 7002 W. Archer Ave., Chicago, Illinois., Telephone # (312) 586-5900, who deposed and stated that they conducted their investigation on video tape for the court. A report of his findings revealed that they walked a normal pace (2 m.p.h.) from 1335 N. Lavergne in Chicago, to the destination of the garage located at 920 N. Lockwood, using the exact

4·07·10

(Exhibit Q)

route of travel as testifed to by Erica Thurman.  It took investigators twenty-three (23) minutes to walk that same distance as testified to by Erica Thurman.  The difference of additional eighteen (18) minutes is crucial evidence in favor of the defendant as it drastically narrowed the window of time the alleged assault occured.

Ineffective assistance of counsel therefore resulted in prejudice to defendants alibi by counsels failure to investigate and present evidence of this crucial time frame.  Counsel therefore allowed to let stand, that the alleged assault occured at five (5) minutes after Thurman left her house at 6:15 a.m.  Evidence herein closes that window to 6:38 a.m. or 6:40 a.m., for Thurman to even meet her attacker for the first time on Lockwood Street(A-55 & A-11-12).

(A-12)

Q:  What happened when you got to the church?

A:  When I got to the church, I saw somebody behind me.  I kept looking back like that.  And when I turned the corner, he ran in front of me.

\* \* \* \* \*

(A-13)

Q:  How many times would you say you looked back?

A:  At least twice.

Q:  After you looked back, did that man do anything?

A:  No.

Q:  What happened next?

A:  He ran in front of me.  He ran to the alley.

\* \* \* \* \*

(A-14)

Q:  When he stopped in the alley, were you still walking or did you stop moving?

A:  I was still walking when he stopped at the alley.

\* \* \* \* \*

(A-15)

Q:  What did he say?

A:  He told me to come on.

Q:  He told you ———— I'm sorry?

A:  He said, "Come on" and I started crying.  Then he told me to put my arm around his.

5.07.10



> Q:  Now, when he told you to do that, what did he do
> with his hand?
>
> A:  He took - he took my hand and put it around his.
>
>          * * * * *
>
> Q:  Then what happened?
>
> A:  Then we was walking towards the garage.

This revelation shows the court that time had been lost even after the 6:38 a.m. confrontation with her attacker.   She still had to walk to the garage, and still had to be assaulted!

Erica Thurman did not reveal how long the assault had taken, but did reveal she waited about one (1) minute after the assault (A-24 & A-55) before she left the garage.

> (A-24)
>
> Q:  How long do you think you waited?
>
> A:  About a minute or so.
>
>          * * * * *
>
> Q:  After you went out of the garage, you were in the
> alley, is that right?
>
> A:  Yes.
>
> Q:  Did you see the defendant in the alley?
>
> A:  No.
>
> Q:  So what did you do?
>
> A:  I ran.
>
> Q:  Where did you run to?
>
> A:  I run to a block and I saw somebody - - - I saw
> this young man in his car.
>
> Q:  How far did you run before you saw this young man?
>
> A:  I ain't run to - - - it was like - - I can't say.
>
> (A-25)
>
> Q:  Okay.   Do you have any idea how long you were
> running?
>
> A:  No.

In actuality, the garage was within several lots distance (40 ft) to the street so she hadn't run far.   Herein its crucial that defense counsel should know this location because later on this is where the squad car is flagged down, and defense could then theroize what time it was by entering police dispatch sheets (6:51 a.m.) and police reports as evidence.

(Exhibit 1Q)

(A-25)

Q: Once you saw this young man on the block, what did you do?

A: I ran to his car.

Q: What happened next?

A: He asked me what was wrong, then I told him somebody had just raped me.

Q: Then what happened?

A: Then that's when we saw a police coming down the street. He just flagged him down.

Q: And did the police stop?

A: Yes.

Counsels ineffectiveness borderlines incompetance for not interviewing police officers in the squad car. Defendant was deprived of the evidence these officers could enter police dispatch call in sheets within minutes of the assault, which showed their call to the station to be 6:51 a.m. These officers could also pinpoint how far Thurman ran (40 ft) from the garage to where the young man flagged down police at. Thurman very conveniently couldn't do that for the States evidence (A-24 & A-25). This prejudiced the defendant very severly even though defendants time card indicated he was in Cicero, Illinois nearly 3.8 miles away at 6:58 a.m. . . . in rush hour traffic. Again counsels incompetance is apparant because of the failure to call Carlo Moreno who was the defendants supervisor at work to establish that the defendant punched in his own time card at 6:58 a.m. that day.

Defendant had a goatee on his face at all times relevant to the alleged assault upon Thurman. Thurmans attacker had only a mustache (A-27). Thurman testified "he was taller than me (A-27) but defense counsel was again ineffective to point this out to the courts. It would stand to reason ashorter person looking upwards to her attacker would first notice the hair on a chin had it been the defendant.

Defendants supervisor at work, Carlo Moreno's testimony was crucial to establish exculpatory evidence that defendant punched in his own time card at 6:58 a.m. Also for the purposes of identification, that defendant had always worn a small goatee on his chin. The trier of facts would then have evidence defendant couldn't have possibly driven to Cicero in seven (7) or eight (8) minutes, parked his car, walked across the street, and punched in his own time card. Its ludicrous to think he could even come close. Moreno's testimony was crucial!!!

7-07-10.

Attached is affidavit from Mid-Central Investigations Inc. 7002 W. Archer Ave., Chicago, Illinois 60638.    Tel. # (312) 586-5900, providing new exculpatory evidence to show the court that investigators traveled from 920 N. Lockwood in Chicago, to 1874 S. 54th Ave., in Cicero, Illinois. Investigator reports reveals that this drive took them fourteen minutes and thirty-four seconds(14:34). This places defendant on his way to work already at the time Erica Thurman was still with her assailant. There is simply not enough time left in between to be sure beyond a reasonable doubt that the defendant is guilty.

A trier of facts must find a defendant guilty beyond a reasonable doubt. The trier does not ask, , , "is it possible the defendant is guilty?" . . . but rather, "is it possible the defendant is not guilty?" Herein the new evidence creates reasonable doubt enough to order a new hearing based upon ineffective assistance of defense counsel and thereafter determin if DNA testing on the evidence collected should be moved for to exhonorate the defendant completely in this case.

Additionally, Thurman testifed that in the summertime of July 7, 1992, her attacker wore a black sweat-shirt and blue jeans(A-10 & A-27). Laverne Bennett testified for defense that she had ironed defendants clothing for work the night before (A-108).  And on that particular day, he wore a blue T-shirt with red lettering across the chest and grey pants.  It should be logical that in the summer of July, the defendant would not wear a sweatshirt to work that hot July 7th day.

The false identification of the defendant as being Thurmans attacker is but part of the cummulative ineffective assistance of counsel that so prejudiced defendant that it deprived him of a fair and impartial trial.

The States methodology of testing evidence from the Vitullas or rape kit was inconclusive.  Testing was in fact, lackadasial, and the entire testimony of State witness Mr. Schultze, not once revealed the actual blood typr found on the evidence.  All Mr. Schultze could testify to was that specimens indicated Thurmans attacker was a non-secretor.  Type O, A, and B can also be a non-secretor. This was not evidence.  It only indicated that 20% of the entire population of the men (and/or women) in the world are non-secretors.

(A-128)

Q: Mr. Chambers: The evidence in this is conclusive of nothing, is that right?

A: Mr. Schultze: That's correct.

Ineffective assistance of counsel failed to subpoena Chicago Police

$\left( Exhibit \cdot 10 \right)$

forensic scientists as to the fingerprints found at the crime scene.    If counsel had called these witnesses, counsel could have at the least <u>eliminated</u> the defendnat from being at the crime scene.    In fact, the <u>lack</u> of establishing any prints on several garage doors or the car door handle at the scene, <u>creates doubt.</u>  Thurmans attacker wore no gloves!

Ineffective counsel failed to interview, investigate, or subpeona witnesses to enter police dispatch sheets, police reports, follow-up police reports into evidence, or to preserve the above issues for review to a higher court.  This prejudiced the defendant and subsequently violated his Constitutional Rights to a fair and impartial trial and the appeal process.

Additionally, counsel was incompetant for stipulating to illegal <u>hearsay</u> evidence for the State(A-134).  Detective Boyle was absent for testimony and defense counsel allowed an unsworn or deposed state prosecutor to tell a flasehood to the Courts as to the whereabouts of Detective Boyle(A-13). Futhermore, it allowed the State prosecutor to enter <u>hearsay evidential testimony</u> as to Detective Boyles findings.  This is in violation of Illinois Supreme Court Rules and Statutes, as well as Rules of the Federal Courts concerning hearsay testimony.  Counsels failure to protect his client was unconstitutional and against the law thus depriving the defendant of a fair and impartial trial.  Counsel again failed to preserve the issue depriving defendant of an appeal process.

## ISSUE II

Prosecutorial misconduct occured by violating the Illinois Supreme Court Rules, as well as the Federal Rules which govern hearsay as "evidence" in a closing rebuttal arguement.

Additionally, the State prosecutor committed the cardinal sin and falsified the reason for the absence of State subpoenaed witness, Detective Boyle, as well as "evidence" in the case.

> (A-134)
>
> Q: Mr. Byrne: "All right judge.  If called to testify, and I want to preface by saying Detective Boyle, I understand this morning, was involved in - - - is in critical condition involved in a traffic accident. I had subpoenaed him here today, but by last report, he was in critical condition in Cook County Hospital, and could not be here."

9-07-10.

# MID-CENTRAL INVESTIGATIONS, INC.

### Chicago (312) 586-5900  •  Indianapolis (317) 634-0425

County of Cook        )
                      ) SS
State of Illinois     )



(Exhibit 10)

We, Tony Lampkin and Michael R. Chiappetta, being duly sworn upon our oaths, depose and state the facts as presented herein, are both true and correct to the best of our knowledge and beliefs, and that we are competent to testify thereto:

1) That our full names are Tony Lampkin and Michael R. Chiappetta.

2) That our address is 7002 West Archer Avenue, Chicago, Illinois  60638.

3) That on April 30, 1996, we went to the location of 1335 North Lavergne in Chicago, Illinois and proceeded by foot to the location of St. Johns Church at Lockwood and Iowa Streets. We began this walk at 6:01 A.M. and ended said walk at 6:24 A.M. for a total of 23 minutes. The total miles for said walk was 1 mile 1 block.

4) That we drove from the location of Lockwood and Iowa Streets in Chicago at 6:30 am on April 30, 1996. We continued said journey to the location of 18th Street and 54th Avenue in Cicero, Illinois where we arrived at 6:44-34 Seconds A.M.

5) The total miles were 3 miles and 5 blocks and the driving time was 14 minutes and 34 seconds.

SUBSCRIBED AND SWORN TO BEFORE ME THIS /0 DAY OF /May/ 1996.

SUBSCRIBED AND SWORN TO BEFORE ME THIS /0 DAY OF MAY, 1996.

NOTARY PUBLIC
My Commission Expires On  1/3/98

OFFICIAL SEAL
KATHLEEN M NINCEVICH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/03/98

10-07-10.

CORPORATE HEADQUARTERS: 7002 West Archer Avenue • Chicago, Illinois 69638

( Exhibit #4 - 11 )
attached here
and made report
of

**FILED**

AUG 3 1 2004

DOROTHY BROWN
CLERK OF CIRCUIT COURT

( STATE OF ILLINOIS )
(                      )
( COUNTY OF COOK     )

IN THE CIRCUIT COURT OF COOK COUNTY, COOK COUNTY DEPARTMENT CRIMINAL DEVISION COURT

IN RE THE DETENTION OF :          )
                                  )
WILLIAM WALLS,                    )
                                  )      HONORABLE JUDGE CONNORS
RESPONDENT                        )      CASE NO. 03-CR-80002
                                  )

## RECONSIDER MOTION TO DISMISS THE STATE'S PETITION DUE TO THE PETITION BEING BROUGHT IN BAD FAITH AND WITHOUT GOOD CAUSE

Now comes, the respondent, William Walls, acting pro-se moves this Honorable
Court in the cause of the Reconsider Motion to Dismiss the State's petition
due to the petition Being Brought in Bad Faith and without Good Cause.
In support the respondent state's as followed:

1. That on Nov 12, 2003; the respondent filed a Motion entitled leave to amend
or Motion to Bar the use of Juvenile records under 705 ILCS 405/1-7(B)(1); 705
ILCS 405/5-905-(5); 705 ILCS 405/5-915-(4).
a). The court move to oral argument on respondent, the respondent then requested
that the court make ther ruling based on the Motion.
b). The State's Attorney then moved to have the authority of law stricken from
the records and then request for the Motion to be denied under 705 ILCS 405/1-7
(a)(9).
c). The court then denied the Motion for leave to amend or Motion to Bar the
use of Juvenile Records under 705 ILCS 405/1-7(a)(9).

2. That on Dec 18, 2003; the respondent filed a Motion to Dismiss the State's
petition Due to the Petition Being Brought in Bad Faith and without Good Cause
under 705 ILCS 405/1-7(B)(1); 405/5-915-(4); 405/5-905-(5); 725 ILCS 207/10-(2),
5/20 of the juvenile court act of 1987 or (now repealed) of section 5-620
of that act.
a). The court order the State's Attorney to respond to respondent Motion and
continue the matter to Jan 22, 2004.
3). That on Jan 22, 2004; the SZtate's Attorney filed there response to the
respondent Motion to Dismiss the State's petition Due to the petition Being
Brought in Bad Faith and without Good Cause.

a). The court denied the respondent's motion to Dismiss the State's petition Due to the petition Being Brought in Bad Faith and without Good Cause.

**ARGUMENT**

Illinois Constitution  Article 1 & 2 State's that Due Process and Equal Protection of the law says that no person shall be deprived of life, liberty or property without Due Process of the laws. General, this is interpreted, to mean that procedure's are suppose's to be Fair and Just. In 1977, the respondent was arrested for the ofvfense of the juvenile records. The ,respondent was only eight years old at the time of the offenses. The respondent was placed in Oddie Home Detention for Offenders. Sence the respondent's wasn't old enough to convict, he stayed ther into he turned 12 years old. ( Into respondent was placed in the Illinois Youth Center St. Charles the respondent stayed into he turned 16 years old in 1986. 735 ILCS 207/1 -(2), says that respondent must be found delinquent under section 5/20 of the juvenile Court Act of 1987 or ( now repealed ) of section 5-620 of that act. Here the responder was not convicted under the 1987 Juvenile Court Act. That on about Jan of 2003;; the State Expert witness Dr. Buck came to the Robinson Correctional Center for the purpose of conducting an evaluation under the  Sexually Violent Person Act. The respondent DID NOT participate in the clinical interview with the State's Expert witness. The State's Expert witness Ms. Buck prepared the petition based on the Illinois Department of Corrections Masterfile. 705 ILCS 405/1-7(B)(1) no law enforcement officer or other person or agency may knowingly transmit to the Department of Corrections Adult Divisio of Federal Bureau of Investigation any fingerprints or photograph relating to minor who has been taken into custody before his or her 17th birthday. Clearly, the use of these records should not have taken placed. these records are sealed and by law should not have been acknowledged , 705 ILCS 405/5-915-(4), State's upon entry of order expunging records or files the offense in which the records or files concern shall be treated as if it never occurred, law enforcement officer and agency shall properly reply that no file exist with respect to that person. The State's Expert Witness Ms. Buck is attempting to maliciously commit the respondent with the use of his juvenile records. that's in violation of the State laws. The State's petition is Being Brought in Bad Faith and without Good Cause. The respondent liberty is Being deprived in violation of the State laws.

705 ILCS 405/5-905-(5), says that the records of law enforcement officer concerning all minor under the age of 17 years of age must be maintained separate from the records of Adults. Respondent present's an Extra Ordinary MOtion that empower the court to grant relief on the showing that the respondent has been denied rights under State laws. Fundamental Fairness embodied in the Due Process Clause require's the court to grant relief under the showing that respondent has been denied rights under State laws.

Wherefore, the respondent prays that this Honorable Court Grant the respondent reconsider motion to dismiss the state's petition due to the petition being brought in bad faith and without good cause.

WILLIAM WALLS
JOLIET ANNEX, IDHS-TDF
401 WOODRUFF RD.
JOLIET, ILLINOIS. 60432-1288

3). o7 3.

( STATE OF ILLINOIS )
(                    )                    ( exhibit. 12 )
( COUNTY OF COOK     )


IN RE THE DETENTION OF :           )
                                   )
WILLIAM WALLS:                     )
                                   ) HONORABLE JUDGE CONNORS
RESPONDENT                         ) CASE NO. 03-CR-80002
                                   )

### CERTIFICATE OF SERVICE AND NOTICE

TO: TIMOHTY BUDZ                        FROM: WILLIAM WALLS
FACILITY DIRECTOR                       JOLIET ANNEX, IDHS-TDF
JOLIET ANNEX, IDHS-TDF                  401 W. WOODRUFF RD.
401 W. WOODRUFF RD.                     JOLIET, ILLINOIS 60432-1288
JOLIET, ILLINOIS. 60432-1288


This is in reference to court writs being transferred from this facility to the
cook county criminal court building. Under the S.V.P. ACT and an individual is
entitled to be present at each hearing and also have a right to probable cause
hearing. In reference to this issue I give (NOTICE THAT I WANT TO BE PRESENT
AT EACH HEARING AND OR PROCEEDING, THAT I DO NOT REFUSE TO BE WRITED TO COURT
FOR ANY HEARING OR PROCEEDING).

I, WILLIAM WALLS, do swear or declare that as required by the Illinois Supreme
Court Rule I have served on the above named party the (Certificate of Service
and Notice), and on every other person required to be served by placing an
envelope containing the above document in the hands of STA SECURITY STAFF
SERGENT OR EXECUTIVE TWO SECURITY STAFF, at the Joliet Annex, treatment and
detention facility, department of human service.


I declare under penalty of perjury
that the foregoing is true and correct,                    PUBLIC NOTARY
Executed on  5.11         , 2004.            SWORN TO BEFORE ME THIS  11  ,
                                             DAY OF  may   , 2004.


WILLIAM WALLS
JOLIET ANNEX, IDHS-TDF                       OFFICIAL SEAL
401 W. WOODRUFF RD.                          FRAN ADEN
JOLIET, ILLINOIS 60432-1288                  NOTARY PUBLIC, STATE OF ILLINOIS
                                             MY COMMISSION EXPIRES:07/01/04

1.071.